FILED
2008 May-08 AM 12:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

AO91 (Rev. 5/93 ND/AL) Criminal Complaint

FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## CRIMINAL COMPLAINT

2008 MAY -7 PM 3:25

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES OF AMERICA

v.                                             **CASE NUMBER**: 5:08-MJ-551-HGD

PEDRO GOMEZ
    also known as
    Pedro Gomez-Gomez
    Pedro Gomez-Diaz

I, James M. Grider, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about April 12, 2008, in DeKalb County, in the Northern District of Alabama, the defendant did,

knowingly possess in and affecting commerce a firearm then being an alien who has been admitted to the United States under a nonimmigrant visa as that term is defined in secion 101(a)(26) of the Immigration and Nationality Act (Title 8, United States Code, Section 1101(a)(26)) in violation of Title 18, United States Code, Section 922(g)(5)(B). I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT INCORPORATED BY REFERENCE

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

May 7, 2008                                           at   Huntsville, Alabama
Date                                                         City and State

HARWELL G. DAVIS, III
United States Magistrate Judge                    _____
Name and Title of Judicial Officer                 Signature of Judicial Officer

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA

**IN THE MATTER OF THE ARREST OF**
**PEDRO GOMEZ**
    **also known as**
    **Pedro Gomez-Gomez**
    **Pedro Gomez-Diaz**

### AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, James M. Grider, hereinafter referred to as affiant, being first duly sworn and deposed, state the following:

1. Affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) currently assigned to the Huntsville, Alabama Satellite Office of the Nashville Division. Affiant has been an ATF Agent for approximately six and one-half years and has approximately seventeen years of law enforcement experience. The affiant's duties as a Special Agent of the ATF include the investigation of specific crimes to include the Possession, Receipt and Transport of Firearms by Prohibited Persons.

2. Title 18, U.S.C., § 922 (g)(5)(B), makes it unlawful for anyone, being an alien who has been admitted to the United States under a nonimmigrant visa as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (Title 8 U.S.C. §1101(a)(26)) to ship, or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

3. The facts of this investigation support this affidavit for probable cause that Pedro Gomez Gomez, also known as: Pedro Gomez, Pedro Gomez-Gomez, Pedro Gomez-Diaz, DOB: being 04/25/1981 was involved in a violation of Title 18, U.S.C., § 922 (g)(5)(B).

### FACTS AND CIRCUMSTANCES

4. On or about April 12, 2008, Dekalb County Sheriff's Office (DCSO) Deputy Gary Hill stopped a Lexus GS300, black in color, bearing Georgia Tag# WX73RX, on County Road 389 at the intersection of County Road 23, Geraldine, Dekalb County, Alabama, 35971. Dep. Hill stopped the vehicle after observing the display of an expired tag. Upon stopping the vehicle, the driver, Pedro Gomez GOMEZ, quickly exited the vehicle and rapidly approached Dep. Hill, before Hill could exit his patrol car. Dep. simultaneously observed the remaining vehicle passenger to be turned around in his seat intently staring at Dep. Hill. Dep. Hill noted the passengers hands were concealed in the vehicle. Dep. Hill later advised affiant, he believed the passenger, later identified as Zaferino MACEDO, to have been holding something out of view, due to the position of MACEDO's body. Dep. Hill advised affiant he was immediately concerned for his personal safety due to GOMEZ'

rushing his patrol car, as well as MACEDO's body positioning and staring. Dep. Hill advised his training and experience led him to believe his life was in danger and perceived GOMEZ and MACEDO to potentially be coordinating to attack him. Dep. Hill immediately ordered GOMEZ to place his hands on the hood of the patrol car and informed GOMEZ, who appeared to understand the English language, that Dep. Hill was going to search GOMEZ for safety.

5. Dep. Hill reported he patted down GOMEZ exterior clothing and located what felt to him like a butterfly-type knife in GOMEZ' left rear pocket. Dep. Hill advised he removed the item to discover it to be a loaded semiautomatic pistol type magazine. Dep. Hill reported he immediately asked GOMEZ where the firearm was that went with the magazine. GOMEZ responded that the firearm was in the car. Dep. Hill advised he told GOMEZ to instruct MACEDO, who did not appear to speak English, to slowly exit the vehicle and walk toward Dep. Hill's patrol car. Dep. Hill advised MACEDO appeared to lower his right arm toward the center console. Dep. Hill advised he then heard the center console door snap closed, directly prior to MACEDO exiting the vehicle. Dep. Hill advised Dep. Bo Waldrop arrived at the scene during the initial contact.

6. Dep. Hill advised GOMEZ of his intent to go to GOMEZ' vehicle to retrieve the firearm. GOMEZ reportedly stated, "Okay". Dep. Hill advised he went directly to the center console where he located a firearm [Mfg: Colt, Mod: Colt Custom 1911, Cal: .38 Super, Type: Pistol, Serial Number: ELCEN4845] with a round in the chamber and loaded with a magazine containing approximately seven (7) rounds. Dep. Hill observed the firearm to be pointed back toward his patrol car. Dep. Hill subsequently located a bag containing approximately forty-one (41) rounds of .38 Super caliber ammunition in the passenger side glove compartment, as well as one (1) round of .380 caliber ammunition lying loose on the back floorboard of the vehicle. Dep. Hill later observed the magazine from GOMEZ' pocket to fit the above-described firearm. Dep. Hill observed the magazine to contain approximately nine (9) rounds of .38 Super caliber ammunition. Dep. Hill subsequently arrested GOMEZ for Carrying a Pistol without a Permit.

7. On or about this same date, United States Customs and Border Patrol (CBP) Detention Officer Bernhard Butcher met with Pedro Gomez GOMEZ, who reported he was a Mexican National. GOMEZ reported he was born in Mexico, of Mexican parents, and claimed to have no petitions or applications pending before the Bureau of Immigration and Citizenship Services. GOMEZ claimed to have entered the United States without being inspected or admitted by an officer possessing the proper immigration authority. Detention Officer Butcher subsequently advised affiant GOMEZ was an undocumented alien illegally residing in the United States.

8. On or about April 15, 2008, affiant and DCSO Investigator René Ramos met with Pedro GOMEZ at the Dekalb County Detention Center. Inv. Ramos, a trained Spanish language translator, assisted by translating for GOMEZ, who reported he spoke some English, but denied fluency in the language. Inv. Ramos advised GOMEZ of Miranda Rights in Spanish, which GOMEZ advised he understood and waived in writing. Inv. Ramos also advised GOMEZ of his potential right to Consular notification, which GOMEZ advised he understood but waived in writing. GOMEZ specifically requested his Mexican Consulate not be notified. GOMEZ provided an oral statement reduced to writing by affiant and signed by GOMEZ, after Spanish translation by Inv. Ramos. During the interview GOMEZ advised he previously handled and fired the firearm recovered from

the vehicle. GOMEZ reported he "did not know" the firearm was in the vehicle at the time he was stopped. GOMEZ reported he knowingly placed the loaded magazine in his pocket "out of curiosity", after finding it in the center console. GOMEZ reported he was a Mexican citizen and had never legally resided in the United States. GOMEZ reported the firearm was purchased by Benita Santa Maria, his niece, approximately one (1) month prior to this date. GOMEZ reported the car he was driving was owned by a subject known only to him as "Jose" a friend of Benita Santa Maria's.

9. On or about April 15, 2008, affiant test-fired the above-described Colt Custom pistol. Affiant observed the firearm to function as designed.

10. On or about April 16, 2008, ATF Special Agent David Pasqualotto, who is trained in identification of firearms as an Interstate Nexus Specialist, advised affiant the above-described firearm was not manufactured in the State of Alabama.

## CONCLUSION

11. Affiant affirms that the aforementioned facts are true and correct to the best of the affiant's knowledge.

James M. Grider, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed to and sworn before me this 7th day of May, 2008, at Huntsville, Alabama.

HARWELL G. DAVIS, IIII
UNITED STATES MAGISTRATE JUDGE